**SECURITY MUTUAL CASUALTY COMPANY, Plaintiff-Appellee,**

v.

**CENTURY CASUALTY COMPANY, Defendant-Appellant.**

No. 74–1809.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 20, 1975.

Decided March 12, 1976.

Rehearing Denied April 5, 1976.

---

5. Ch. 197, [1970] Okl.Sess.Laws 326–34.

Michael F. Scott, Denver, Colo. (Roger D. Bush and James H. Mosley, Denver, Colo., on the brief), for defendant-appellant.

A. Denison Weaver, Chicago, Ill. (John E. Clough, Denver, Colo., on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Security Mutual Casualty Company, the appellee, brought this action seeking a declaratory judgment determining its rights and liabilities under a reinsurance treaty with Century Casualty Company, the appellant. Security Mutual also sought to recover damages incurred as a result of a judgment against Century's insured, Anderson Aviation Sales Company, Inc.

Security Mutual claimed it had no liability as reinsurer because Century Casualty failed to give timely notice of the fatalities and resulting claims involved in the Anderson Aviation litigation. The trial court held that, under the reinsurance treaty, notice was a condition precedent to Security Mutual's liability to indemnify Century Casualty. The court found as a matter of fact that notice was not given and entered judgment for Security Mutual.

The two companies entered into the reinsurance treaty in March, 1966. Security Mutual agreed to reinsure a specified portion of Century Casualty's losses under its primary insurance contracts in return for a portion of the premiums. During 1969, Century Casualty insured Anderson Aviation, an Arizona corporation in the business of leasing airplanes to the public. The policy was within the scope of the reinsurance treaty. On September 3, 1969, an Anderson Aviation plane crashed in Blythe, California, killing the pilot and five passengers and destroying the plane. Suit was brought in the state court of Arizona on behalf of the passengers against the passengers' employer, the pilot, and Anderson Aviation. Anderson Aviation was held liable on the theory of negligent entrustment.

The judgment, in the amount of $385,000 plus costs and interests, was affirmed on appeal. *Anderson Aviation Sales Co., Inc. v. Perez*, 19 Ariz.App. 422, 508 P.2d 87 (1973).

Century Casualty received notice of the death claims and the claims for hull damage to the airplane shortly after September 8, 1969. Century paid the claim for damage to the airplane and submitted a reinsurance claim on December 1, 1969. Security Mutual paid the reinsurance claim two weeks later. Suit was filed on the death claims on September 12, 1970, but the trial court found Security Mutual received no notice of the deaths or the lawsuits until April 27, 1971, after the verdict had been returned against Century's insured and the post-trial motions had been denied. Century Casualty provided the defense in the Arizona trial court, but requested Security Mutual's assistance in the appeal. Security posted $308,000 and Anderson Aviation posted $82,000 on the supersedeas bond. Security Mutual and Century Casualty cooperated in the unsuccessful appeal.

In the present action Security Mutual seeks to establish that it is not liable under the reinsurance treaty for any part of the Arizona judgment against Century Casualty's insured. It also seeks to recover its expenses in prosecuting the appeal from that judgment. The trial court in this case determined, as a matter of fact, that notice was not given as required by the treaty. The sole question on appeal is whether notice of the deaths and subsequent claims is a condition precedent to Security Mutual's liability under the reinsurance treaty. If it is, the judgment must be affirmed. We conclude it is not and therefore reverse the judgment.

■ We have been cited to only one case deciding whether notice from the primary insurer to its reinsurer is a condition precedent to the reinsurer's liability. In *Keehn v. Excess Insurance of America*, 129 F.2d 503 (7th Cir. 1942), the court held notice of loss was a condition precedent under the terms of the contract there in dispute. *Keehn* was decided under Illinois law, and

we do not believe Colorado law compels the same result. Moreover, every contract must be interpreted according to its own terms.

■■ The Colorado cases cited by appellant involve primary insurance rather than reinsurance. In Colorado, notice of loss may be expressly made a condition precedent to an insurer's liability. *Barclay v. London Guarantee & Accident Co.*, 46 Colo. 558, 105 P. 865 (1909); *see Dairyland Insurance Co. v. Cunningham*, 360 F.Supp. 139 (D.Colo.1973). However, a provision for notice will not be construed as a condition precedent unless that intention is clearly and unequivocally stated in the contract. *Connecticut Fire Insurance Co. v. Colorado Leasing Mining & Milling Co.*, 50 Colo. 424, 116 P. 154 (1911); *Preferred Accident Insurance Co. v. Fielding*, 35 Colo. 19, 83 P. 1013 (1905). The same rule is stated in 13 Couch on Insurance 2d § 49:20 as follows: "[S]tipulations for notice will not be construed as conditions precedent if reasonably open to another construction."

■ Before we may apply these rules of construction, however, we must attempt to determine the intent of the parties by interpreting the language of the contract. A court will not force an ambiguity in order to resolve it against an insurer. *Massachusetts Mutual Life Insurance Co. v. DeSalvo*, 482 P.2d 380 (Colo.1971); *Southern Surety Co. v. MacMillan Co.*, 58 F.2d 541 (10th Cir. 1932), *cert. denied*, 287 U.S. 617, 53 S.Ct. 18, 77 L.Ed. 536. The notice provision of the Security Mutual-Century Casualty reinsurance treaty states:

The Company [Century] shall immediately give notice to the Reinsurer [Security] on all claims reserved in excess of the Company' [sic] retention and also shall give prompt notice to the Reinsurer on claims which, in the judgment of the Company could develop into losses involving reinsurance hereunder. Further, as respects bodily injuries, the Company shall report to the Reinsurer all claims involving fatalities, . . . regardless of liability, where the policy limits (or

Workmen's Compensation Benefits) applicable to such losses exceed the retention of the Company . . . .

■ We do not believe this language plainly states a condition precedent. It is significant, in a contract as carefully drawn as an insurance contract, that none of the usual words indicating a condition precedent are present. *See Southern Surety Co. v. MacMillan Co., supra.* Perhaps more significant is the inclusion of language expressly designating compliance with another contract clause a condition precedent. The arbitration clause states, "[A]s a condition precedent to any right of action hereunder, the parties to this agreement shall submit the matter in dispute to arbitration." Certainly the omission of similar language from the notice clause is some indication it was not considered a condition precedent.

■ Security Mutual argues that the notice provision is expressly made a condition precedent by the following clauses in page one of the reinsurance treaty:

*Witnesseth:*

That in consideration of the mutual covenants hereinafter contained and upon the terms and conditions hereinbelow set forth, the parties hereto agree as follows:

*ARTICLE I*

*POLICIES COVERED:*

The reinsurer hereby agrees to indemnify the Company in respect to the net excess liability which may accrue to the Company under its policies . . . .

.  .  .  .  .

subject to the terms, conditions and limitations of this Agreement and of the Exhibits . . . .

Security points out that a similar clause was considered sufficient to create an express condition precedent in *Barclay v. London Guarantee & Accident Co., supra.* We agree that a catch-all conditioning clause at the beginning of a contract may be sufficient when all the clauses following are true conditions. In an ordinary insurance contract, like that in *Barclay*, this may often be the case. A primary insurance contract is essentially unilateral in nature. The entire relationship is based upon a promise and a condition. The insurer promises to pay a sum of money upon the happening of an uncertain and fortuitous event, conditioned upon the payment of premiums by the insured. The insured makes no return promise to pay the premiums and the other duties placed on the insured are usually stated as conditions rather than promises. 3A Corbin on Contracts § 731 (1960). We believe this explains the court's holding in *Barclay*.

■ In contrast, a reinsurance treaty is a contract for insurance, not a contract or policy of insurance. 19 Couch on Insurance 2d § 80:2 (1965). In a reinsurance treaty, the reinsured contracts to cede all or part of its risks to the reinsurer. The reinsurer contracts to accept the risks in return for a portion of the premiums. 13 Appleman, Insurance Law and Practice § 7681 (1945). A treaty is a bilateral contract containing mutual covenants. The Security Mutual-Century Casualty treaty contains provisions, such as those pertaining to loss reserves and taxes and to commencement and termination of the contract, which appear to be covenants rather than conditions. We cannot say that a clause stating the agreement is made "upon the terms and conditions hereinbelow set forth" makes every provision in the succeeding 12 pages of the contract a plain and unequivocal condition precedent, especially when the clause also refers to "mutual covenants hereinafter contained."

In this regard, our case is closely akin to *Southern Surety Co. v. MacMillan Co., supra*, where the court found the word "provided," which usually indicates a condition precedent, had been indiscriminately used to introduce some paragraphs that might be conditions and others that might be covenants. The court held that the use of condition precedent language did not remove the ambiguity and resorted to the rules of construction to enforce the contract. We are likewise unable to determine the intent of the parties by interpreting the language

of the contract and must apply the rules of construction.

■ We noted above that Colorado law does not favor construing ambiguous terms as conditions precedent. A construction as covenants rather than conditions is desirable because it avoids forfeitures. *Southern Surety Co. v. MacMillan Co., supra*; 13 Couch on Insurance 2d § 49:20 (1965). In addition, it has been held that any ambiguity in a reinsurance contract is to be resolved against the reinsurer unless the language is that of the original insurer. *Justice v. Stuyvesant Insurance Co.*, 265 F.Supp. 63 (D.W.Va.1967). Applying these rules to the contract before us, we hold the notice provision is a covenant by Century and not a condition precedent to Security's duty to make payment.

■ We believe our construction of the reinsurance treaty is consistent with the main purposes of the contract. The purpose of notice and proof of loss clauses in primary insurance contracts is to afford the insurer an opportunity to form an intelligent estimate of its liabilities, to afford it an opportunity to investigate the claim while witnesses and facts are available, and to prevent fraud and imposition upon it. 44 Am.Jur.2d Insurance § 1455 (1969). In reinsurance contracts, like the one before us, the investigation and defense of the claim is usually left to the primary insurer. Although Security was given the right to associate in the defense of claims, when it so desired, such participation was not so essential as it is for a primary insurer. Century had as much reason as Security to see that the death claims in the Anderson Aviation litigation were properly investigated and defended. Between the two insurers, there was little danger of fraud or imposition. Had Security shown any pecuniary injury from Century's failure to give them notice, we believe damages would have been an adequate remedy. Our construction of the contract does not deny the reinsurer the protection it needs, and it does give the reinsured the security and returns for which it paid. *See* 1 Couch on Insurance 2d § 15:26 (1965).

Finally, we should emphasize the public policy considerations that support our judgment. The Colorado Commissioner of Insurance is charged with the duty of protecting the State's insurance-buying public. Colo.Rev.Stat.Ann. § 10–1–108 (1973). Pursuant to this duty, he must assure the solvency of insurers doing business in Colorado. This is accomplished primarily by requiring certain minimum capital reserves. However, Colo.Rev.Stat.Ann. § 10–3–118 (1973) provides that an insurer "may take credit for reserves on risks ceded to a reinsurer." In an *amicus curiae* brief filed in the trial court and incorporated in Century Casualty's brief before this Court, the Commissioner points out that the credit for reinsurance is necessary to keep many small but highly competitive companies in the insurance business. If this credit is to be allowed, the Commissioner must be certain the reinsurance will be available when a claim is made. In this regard, § 10–3–118(e) provides: "No credit shall be allowed for reinsurance where the reinsurance contract does not result in the absolute transfer to the reinsurer of the risk of liability."

For the Commissioner to accurately determine whether the transfer of liability is absolute or conditional, we think the language of the contract must be plain and unequivocal. To allow an insurer to obtain credit for reserves on a reinsurance contract that contains obscure conditions precedent, and then allow the reinsurer to subsequently deny liability, would substantially impair the function of the Commissioner of Insurance. Moreover, it would substantially increase the danger to the public. An apparently solvent insurer might be plunged into insolvency through its reinsurer's reliance on the nonperformance of an ambiguous condition precedent. If we require any condition that might result in forfeiture to be clearly stated, it will enable the Commissioner to accurately determine when a credit against reserves for reinsurance should be given. A different holding in this case would undermine the Commissioner's ability to ascertain the solvency of Colorado insurance companies.

We reverse the judgment insofar as it holds Security Mutual is not liable under the reinsurance treaty for the Anderson Aviation judgment. The amount of its liability should be determined under the terms of the reinsurance treaty. Therefore, the judgment for damages is also reversed. Century Casualty has not appealed from the part of the judgment declaring that Security Mutual is entitled to terminate the reinsurance treaty, and it will be allowed to stand. We remand with directions to enter judgment consistent with this opinion.