**JEFFERSON INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**FORTRESS RE, INC., and Calvert Fire Insurance Company, Defendants.**

**No. 82 Civ. 8167 (CSH).**

United States District Court, S.D. New York.

July 11, 1984.

On Motion to Reargue Sept. 25, 1984.

Leonard A. Sheft and Associates, New York City (Jeffrey A. Marshall, New York City of counsel), for plaintiff.

Layton & Sherman, New York City (Frederick E. Sherman, Thomas L. Abrams, New York City, of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge.

Plaintiff Jefferson Insurance Company of New York ("Jefferson") agreed to insure a New York taxicab company against that part of its accident liability exceeding $100,000 and under $1,000,000 dollars. The cab service apparently was self-insured against losses under $100,000. Jefferson then entered into a reinsurance agreement with defendant Fortress Re, Inc. ("Fortress"), acting on behalf of defendant Calvert Fire Insurance Company ("Calvert"), which covered any liability of Jefferson to the cab service exceeding $100,000. Thus Fortress was required to pay only if the cab service's liability exceeded $200,000.

The contract of reinsurance contained a notice clause which read:

Prompt notice shall be given to the Reinsurer by the Company of any occurrence or accident which appears likely to involve this reinsurance and while the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

Under another provision of the policy, Jefferson "warrant[ed] to retain for its own account" the $100,000 of liability above the cab service's self-insurance and below Fortress's level of liability. In other words, Jefferson agreed not to contract for reinsurance of this $100,000 layer of liability. The purpose of such a provision is apparently to insure that the reinsured retains a stake in keeping claims below the level of the reinsurance.

On June 28, 1975, a date when both policies were in effect, a cab driver injured two pedestrians. One victim received a concussion; the other suffered severe leg injuries. Jefferson was informed of the accident on October 3, 1975. Soon thereafter it was provided with details of the lawsuit filed by the accident victims. The *ad damnum* clause of the complaint requested $450,000, plainly implicating Fortress's reinsurance policy. The facts as disclosed to Jefferson made it clear that the victims would almost certainly prevail on the issue of liability. Despite the *ad damnum* and the description of the victims' injuries as "substantial," Jefferson apparently decided that the accident would not be likely to involve Fortress's coverage, for it put aside $10,000 of its own money and sent no notice to Fortress. Two years later, on the basis of an independent medical examination of the victims, plaintiff put aside an additional $25,000 to cover the accident. Again, it did not notify Fortress.

Finally, three years after the accident, the case was ready for trial. At a pretrial conference in June, 1978, a Jefferson representative for the first time examined the victims' physical condition. The Jefferson representative quickly concluded that, based on scarring of one of the victim's legs, a jury verdict could easily reach $400,000, and the case was settled for $235,000. Soon after, Jefferson asked Fortress for its $35,000 share of the settlement, but Fortress refused on the ground that Jefferson failed to comply with the notice requirement. It was also later disclosed that, in violation of the warranty to retain $100,000 of liability for its own account, Jefferson had farmed out $50,000 of its layer of liability through a reinsurance treaty.

Jefferson brings this action to enforce the reinsurance agreement and to recover the $35,000. Defendants move for summary judgment, claiming that Jefferson breached both the warranty and notice provisions of the contract. Compliance with both of these, it is claimed, was a condition precedent to Fortress's liability.

The issues are complicated slightly by the presence of a decision in a prior lawsuit between Jefferson and Fortress. A North Carolina federal court concluded, in *Fortress Re, Inc. v. Jefferson Insurance Co. of New York*, 465 F.Supp. 333 (E.D.N.C.1978), *aff'd*, 628 F.2d 860 (4th Cir.1980), in circumstances very similar to these that under North Carolina law Fortress was entitled to prevail independently on both issues. Fortress claims preclusive effect for the prior decision.

I.

Defendants contend that North Carolina law applies to this action. Plaintiff argues that application of New York law is proper. The question is significant, for only if North Carolina law is applicable in New York will the North Carolina decision have collateral estoppel effect.

In deciding that North Carolina law applied, the Eastern District of North Carolina of necessity applied North Carolina choice of law rules. *Klaxon Co. v. Stentor*

*Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). By the same token, I must apply New York's. If the two states choice of law rules were identical, I would assume Jefferson to be collaterally estopped on the issue of choice of law. They are not. North Carolina applies to contract actions the law of the place where the contract was made. *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 261 S.E.2d 655, 656 (1980). New York applies a "contacts" analysis, applying the law of the state with the greatest interest in the litigation. *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 581 (1969); *United States v. Sonal, Inc.*, 573 F.Supp. 1126, 1128 (S.D.N.Y.1983).

The law at issue is that governing the provisions of a contract of reinsurance. The parties made no choice of law in the contract. The certificate of reinsurance was issued in North Carolina, and the obligation to perform arose upon presentation of the claim to Fortress in North Carolina, where its offices are located. Plaintiff is a New York corporation, and the risks insured against arose there.

■ Based on these contacts, North Carolina's interest appears greater. That state plainly has an interest in guiding the interpretation of contracts formed and to be performed there. Although New York might have an interest in protecting its insureds under ordinary contracts of insurance, it has manifested no particular interest in protecting parties to contracts of reinsurance. Indeed, these are not so much contracts of insurance but of indemnity. *Great American Insurance Co. v. Fireman's Fund Insurance Co.*, 481 F.2d 948, 950 (2d Cir.1973). Plaintiff emphasizes the presence of the risk in New York. If this was a suit on the underlying contract of insurance, this factor would weigh heavily. However, the interest of New York becomes more attenuated when the suit is premised solely on the reinsurance contract. Then the question of place of risk must be weighed against other traditional factors such as place of formation

and performance—here North Carolina. Plaintiff points to no manifest New York interest which would be furthered by application of its law; North Carolina is inevitably interested in guiding interpretation of contracts made and performed there. Application of its law is appropriate.

## II.

Fortress brought a declaratory judgment action against Jefferson in North Carolina district court in 1978 which raised issues similar to those raised here. In an opinion of December 20, 1978, Judge Dupree decided both questions against Jefferson. At issue now is the collateral estoppel effect of that decision.

■ A party given a full and fair opportunity to litigate an issue of law in one action may be estopped from relitigating it in a subsequent action. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n.6, 102 S.Ct. 1883, 1890 n.6, 72 L.Ed.2d 262 (1982). The doctrine of collateral estoppel is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980), quoted in *Kremer, supra*, 456 U.S. at 467, n.6, 102 S.Ct. at 1890 n.6.

Despite the similarity of the two actions, Jefferson argues that preclusion is inappropriate here. With regard to the question of notice, it argues that the circumstances are sufficiently different that the "issues" presented by the two lawsuits are not the same. Concerning the question of liability kept for its own account, Jefferson claims to have uncovered new evidence which calls into question the correctness of the prior decision.

In the North Carolina action, Jefferson's insured was involved in a fatal accident. The complaint requested damages of $550,000, plainly invoking Fortress's reinsurance of any Jefferson liability from $25,000 to $300,000, yet without explanation Jefferson waited for one year before notifying For-

tress of the accident. The notice provision in that contract was identical to that in this one. Judge Dupree held that this one-year delay as a matter of law barred Jefferson's recovery under the contract of insurance.

▮▮▮ I agree with plaintiff that the issue presented to Judge Dupree is not wholly identical to the one before me. In that action, there was no question that the accident would involve Fortress's reinsurance. Its liability began at $25,000, and the *ad damnum* clause requested $550,000. For that reason, Judge Dupree did not bother to consider the issue. Here, the question requires more discussion. Jefferson is estopped, however, from litigating issues of whether failure to give prompt notice bars recovery under the contract and whether a delay of one year can be "prompt" notice. These issues were clearly presented by Judge Dupree, and there is no dispute that Jefferson had a full and fair opportunity to litigage them.

### III.

Jefferson argues that under the notice provision it was not required to notify Fortress of a claim until it became apparent to Jefferson that the claim was likely to involve Fortress's reinsurance. In the case at hand, that did not happen until a Jefferson agent walked into a room containing the accident victim and instantly recognized the large exposure created by her disfiguring injuries. Fortress counters that such an interpretation effectively reads out of the notice provision the clause which gives Fortress "the right ... to associate with [Jefferson] ... in the defense and control of any claim, suit or proceeding involving this reinsurance ...."

▮▮▮ I agree with the defendants that to accept plaintiff's argument would entirely undercut the notice provision. Plaintiff argues essentially that it may act as an entirely passive observer of the litigation. Only if, in its judgment based upon whatever facts happen to come its way, a claim is likely to involve Fortress must it notify Fortress. There is nothing in the notice provision which supports application of such a subjective standard. Although it is true that Jefferson is the only party to whom it can "appear" likely that a claim will involve Fortress, that fact does not automatically vest unfettered discretion in Jefferson to determine when a claim appears likely to involve Fortress. To adopt such a reading would insulate Jefferson entirely from any effective duty of notice. Unless Jefferson had no excuse for delaying in giving notice, as in the North Carolina action, it could always defend its decisions as to the timing of notice by reference to its failure to perceive likelihood.

▮▮▮ The requirement that Fortress be given an opportunity to participate in the defense of the action places a limit on Jefferson's discretion. At a minimum, Jefferson must give notice soon enough to Fortress to give Fortress an effective opportunity to participate in a claim's defense. Fulfillment of the duty of notice requires Jefferson to make active inquiries into the merits of a particular claim, rather than sit back and base its judgment solely on the information given to it. In furtherance of that duty, Jefferson must make reasonable inquiry into the likelihood that the claim will involve Fortress. These are bargained—for provisions in the contract of reinsurance which adhere to the benefit of Fortress. Only if reasonable inquiry cannot reveal facts which make involvement of reinsurance likely is Jefferson relieved of its duty to give Fortress an effective opportunity to participate in the defense of an action. No other reading of the notice provision gives effect to both the "appearance" and the "defense" clauses.

▮▮▮ In this case, it is beyond dispute that reasonable inquiry would have put Jefferson on notice that reinsurance might be involved. The *ad damnum* clause requested well over twice the amount necessary to involve Fortress. The lawyers' report stated that the injuries were substantial. This alone should have alerted Jefferson. Further, it is clear from the later report of Jefferson's agent that the serious nature of one of the victim's injuries was apparent

from looking at her. If the magnitude of this scarring was immediately apparent nearly three years after the accident, it could undoubtedly have been easily ascertained within months of the accident. It is no defense for Jefferson to claim, as it does, that it was relying on the reports of others who misinformed it. It must take responsibility for the failures of those on whom it relies to carry out its contractual duties.

Reasonable inquiry would have revealed to Jefferson that this accident was likely to involve Fortress at a time when Fortress still had an effective opportunity to participate in the defense of the action. Jefferson failed, however, to give such timely notice. It cannot now defend that failure by arguing that it did not timely recognize the magnitude of the injuries. To permit such a defense would effectively read the "opportunity to defend" clause out of the contract and leave Fortress at the mercy of Jefferson's passive perceptions. Since Jefferson is collaterally estopped from arguing that the failure to comply with the notice provision is no bar to its recovery, Fortress and Calvert are entitled to summary judgment.

Because I reach this result, I need not consider defendants' other ground for summary judgment.

### CONCLUSION

The undisputed evidence demonstrates that Jefferson could have, but failed to, give prompt, effective notice to Fortress of the accident underlying this claim. This failure was a breach of a condition precedent to Jefferson's recovery under the contract of reinsurance. Defendants are entitled to summary judgment dismissing the complaint in its entirety. The Clerk is directed to dismiss the complaint with prejudice and costs.

SO ORDERED.

### ON MOTION TO REARGUE

Plaintiff has moved for reargument of my July 11, 1984 Memorandum Opinion and Order dismissing its claims under a contract of reinsurance. Since the facts are adequately presented there, I will not restate them.

In that opinion I held that a decision rendered in a prior action between the same parties, reported as *Fortress Re, Inc. v. Jefferson Insurance Co. of New York*, 465 F.Supp. 333 (E.D.N.C.1978), *aff'd*, 628 F.2d 860 (4th Cir.1980), collaterally estopped plaintiff from contesting the issue of whether its failure to provide timely notice of an accident likely to involve defendants' reinsurance relieved defendants of their obligations under the reinsurance contract. Plaintiff now calls to my attention a 1981 decision by the North Carolina Supreme Court, *Great American Insurance Co. v. C.G. Tate Construction Co.*, 303 N.C. 387, 279 S.E.2d 769 (1981), which, plaintiff claims, substantially altered the interpretation of insurance contract notice provisions in North Carolina. It argues that this superseding change in law should remove any collateral estoppel effect which the 1978 Eastern District of North Carolina decision might have had and that the law established in *Great American* requires that I reverse my decision on the motion.

I refuse to alter the result of my July opinion. Assuming *arguendo* that the *Great American* case controls here, I find that its application would not change the result reached in that opinion. The *Great American* court adopted a "prejudice" test for determining whether a long, unexcused delay in providing notice to an insurer removed the obligation to insure under a contract requiring notice "as soon as practicable." Under the new test, if an insured demonstrates that it acted in good faith in giving tardy notice, the insurer must demonstrate that "its ability to investigate and defend was materially prejudiced by the delay" in order to escape liability. 279 S.E.2d 776.

██ In this action, the reinsurer was not informed of the claim until after the action on which it was based had been settled. By that time, the reinsurer had no opportunity to investigate or defend; its liability

was presented as a *fait accompli*. There could be no plainer example of the prejudice which the *Great American* court held relieves the insurer of liability.

In this circumstance, further argument is pointless. Applying *Great American* will not change the outcome of the motion. The motion to reargue is denied.

It is SO ORDERED.