STONEWALL INSURANCE COMPANY v. FORTRESS REINSURERS MANAGERS, INC., ET AL.

No. 8510SC889

(Filed 18 November 1986)

1. **Insurance § 149— railroad liability reinsurance—meaning of "for its own account"**

   A provision in a railroad liability reinsurance certificate that the reinsured warranted to retain "for its own account" a liability of $500,000 was unambiguous and included only net retention and not net retention plus treaty reinsurance with another reinsurer.

2. **Insurance § 149— railroad liability reinsurance—breach of condition precedent**

   An insurer's breach of a provision in a railroad liability reinsurance certificate warranting that the insurer would retain a liability of $500,000 "for its own account" constituted a breach of a condition precedent which relieved defendant reinsurer of its duty to perform under the certificate regardless of plaintiff's good faith or prejudice to defendant reinsurer.

3. **Insurance § 149— liability reinsurance certificate—no reformation for mutual mistake**

    The trial court did not err in failing to reform a reinsurance certificate on the ground of mutual mistake to include treaty reinsurance in the amount retained by plaintiff insurer "for its own account."

4. **Insurance § 149— liability reinsurance certificate—company retention provision —no waiver of violation**

    The evidence did not require the trial court to find that defendant reinsurer waived plaintiff reinsured's violation of the company retention provision of the reinsurance certificate or that defendant reinsurer was estopped to plead such alleged violation.

5. **Insurance § 149— special ceding not treaty reinsurance**

    The evidence supported a finding by the trial court that reinsurance specially ceded by the reinsured to a third reinsurer was "not treaty reinsurance."

6. **Insurance § 149— liability reinsurance—interpretation of provision—competency of claims manager to testify**

    Defendant reinsurer's claims manager, who had 35 years of experience in the insurance and reinsurance industry, was competent to testify as to defendant's interpretation of the company retention provision of its reinsurance policy with plaintiff reinsured. N.C.G.S. § 8C-1, Rules 401 and 701.

APPEAL by plaintiff from *Bailey (James H. Pou), Judge*. Judgment entered 14 March 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 3 March 1986.

In September 1973, North River Insurance Company (hereinafter "North River") issued its policy of liability insurance to the Florida Eastcoast Railroad (hereinafter "Railroad"), effective from 9 September 1973 through 9 September 1974. Under the terms of the coverage, the Railroad was responsible for defending and paying each claim which fell within the initial $300,000 of liability, and any loss in excess of $300,000 was insured by the North River policy up to $2,000,000.

Prior to the inception of the policy period, North River purchased from Stonewall Insurance Company (hereinafter "Stonewall") a policy of reinsurance on the Railroad risk. Stonewall's reinsurance policy insured, on a pro-rata basis, $1,225,000 of North River's liability under its policy with the Railroad.

On 7 September 1973, Fortress Reinsurers Managers, Inc. (the corporate defendant's name was subsequently changed to Penn Re, Inc., hereinafter referred to as "Penn Re") agreed to re-

insure $500,000 of the exposure Stonewall had on the North River-Railroad policy. Penn Re's Certificate of Facultative Reinsurance contained a retention provision which is the subject of the present appeal. The retention provision reads:

> The Company [Stonewall] warrants to retain for its own account the amount of liability specified in Item 3 unless otherwise provided herein, and the liability of the Reinsurer specified in Item 4 shall follow that of the Company, except as otherwise specifically provided herein, and shall be subject in all respects to all the terms and conditions of the Company's policy.

The amount of company retention shown in Item 3 of the Reinsurance Certificate issued to Stonewall was $500,000.

Stonewall, at the time it contracted for reinsurance of the North River-Railroad policy, had in existence a reinsurance treaty with a third company, the American Mutual Reinsurance Company (hereinafter "AMRECO"). The terms of that treaty excluded from automatic coverage a railroad risk such as that covered by North River's policy with the railroad. Pursuant to the terms of the treaty, Stonewall submitted its reinsurance of the North River policy on the Railroad for consideration as a special cession. Prior to 9 September 1973, AMRECO waived the exclusions in the treaty and issued its Special Cession Certificate wherein Stonewall would remain liable on the first $50,000 of loss and AMRECO would be liable on the remaining $450,000.

On 11 December 1973, an accident occurred involving Jack Russell and the Railroad. Thereafter, North River made payment under its policy with the Railroad for that accident. Stonewall made payment to North River under its policy of reinsurance with North River in the amount of $1,263,775.75 on this claim. Subsequently, Stonewall made demand upon Penn Re in an amount totalling $500,563, such sum representing Penn Re's share of losses and expenses paid by Stonewall for the Russell claim.

Further, an accident occurred on 16 March 1974 involving the Railroad and R. J. Bernard. North River, under its policy insuring the Railroad, made payment to Bernard in the amount of $400,000. North River made demand upon Stonewall for payment in the amount of $246,163.75, representing Stonewall's portion of losses and expenses incurred on the Bernard claim. Stonewall

made payment to North River in the amount of $246,163.75 under its policy reinsuring North River and, in turn, made demand upon Penn Re for payment in the amount of $100,475, said sum representing Penn Re's share of paid losses and expenses by Stonewall on the Bernard claim.

Penn Re denied liability on both claims by contending that the $500,000 shown by Stonewall as the amount of company retention in Item 3 of the Reinsurance Certificate was not retained by Stonewall "for its own account" as required by the company retention provisions. The $500,000 designated as company retention was made up of $50,000 retained "net" by Stonewall and $450,000 reinsured under its treaty with AMRECO through the Special Cession Certificate issued by AMRECO to Stonewall.

On 16 September 1981, Stonewall filed this civil action and sought (i) $601,038.39 in damages based on alleged breach of the certificate of reinsurance, (ii) $10,000,000 in punitive damages, and (iii) treble damages for unfair trade practices in violation of G.S. 75-1.1. Penn Re answered and asserted, among other defenses, that although Stonewall warranted to defendants that it was retaining $500,000 of the risk reinsured by the certificate, Stonewall breached that provision of the certificate by reinsuring $450,000 (90%) of that amount without informing defendants, thereby relieving defendants of any liability under the certificate of reinsurance.

On 10 November 1982, Judge Robert L. Farmer entered summary judgment for Penn Re on Stonewall's claims for punitive and treble damages. Stonewall's remaining contract claim was tried before Judge Bailey, sitting without a jury. Judge Bailey concluded that compliance with the warranty of retention was a condition precedent to Penn Re's obligation to reimburse Stonewall for any losses pursuant to the certificate and that Stonewall had materially breached the warranty of retention. From judgment in favor of defendants, plaintiff appealed. From the trial court's denial of its motion to amend its answer and counterclaim, defendants cross-appealed.

*Young, Moore, Henderson and Alvis, P.A., by R. Michael Strickland and David P. Sousa for plaintiff-appellant.*

*Sanford Adams McCullough and Beard by H. Hugh Stevens, Jr., William G. Pappas and John J. Butler for defendants-appellees.*

PARKER, Judge.

[1] Plaintiff first contends that the trial court erred in failing to conclude as a matter of law that amounts Stonewall reinsured through treaty insurance are held by plaintiff "for its own account," or, alternatively, that Penn Re's company retention language is ambiguous and that such ambiguity must be construed in favor of Stonewall. The question is what do the words "for its own account" mean. Plaintiff contends that "for its own account" means net retention plus treaty reinsurance; defendant contends "for its own account" means only net retention. Net retention is that amount which the reinsured insurance carrier will pay on an insured claim. Treaty reinsurance is that portion of an insured claim which has been ceded to another insurance company, and which will be paid by that insurance carrier.

Plaintiff argues that because premiums charged for treaty reinsurance are calculated to cover the losses incurred such that the reinsured will ultimately pay in full any losses, the amount of company retention reinsured through treaty reinsurance is in fact an amount held for its own account. In other words, since plaintiff will ultimately be required to pay the amount ceded to AMRECO, plaintiff has not reduced its risk and has retained for its own account the full $500,000.

In interpreting the language of a contract, "words of a contract referring to a particular trade will be interpreted by the courts according to their widely accepted trade meaning." *Peaseley v. Coke Co.*, 282 N.C. 585, 597, 194 S.E. 2d 133, 142 (1973). The instant case concerns a specialized area of insurance law; therefore, parol evidence as to the meaning of the term "for its own account" was necessary to determine the usual and ordinary meaning of that term in the reinsurance industry. After hearing substantial evidence from both parties as to the meaning of the term in the reinsurance industry, the trial judge found "that the phrase 'for its own account' is not ambiguous and did not permit

Stonewall to reinsure any portion of the warranted retention in any fashion without the express approval of the defendants." The court further stated:

> [T]he court is not persuaded by the evidence that there exists any common understanding or custom in the reinsurance industry whereby the terminology 'for its own account' contemplates or implicitly approves any reinsurance of the warranted retention via treaty reinsurance. Rather, the expert witnesses presented by both sides agreed that the reinsurance industry is essentially unregulated, at least with regard to the language and construction of reinsurance contracts, and that such contracts . . . are negotiated and entered into on an individual basis . . . [and] their exact wording varies.

When the trial judge sits as the trier of fact without a jury, the court's findings are conclusive on appeal if there is any competent evidence to support them even though the evidence might sustain findings to the contrary. *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975). The two people who negotiated the contract on behalf of plaintiff and on behalf of defendants testified. The testimony of both was that there was no discussion as to whether a portion would be ceded to treaty insurance or not. Hence there was no evidence of an intention by the parties to include treaty reinsurance as part of the amount retained by the company for its own account. We hold that the trial court did not err in finding the term "for its own account" unambiguous and in ruling as a matter of law that the term did not include both net retention and treaty reinsurance.

[2] Plaintiff next argues that even if plaintiff breached its warranty of retention the trial court's conclusions are erroneous as a matter of law inasmuch as there are no findings of fact or conclusions of law regarding plaintiff's good faith or any prejudice to defendants. In support of this position, plaintiff relies upon the case of *Insurance Co. v. C. G. Tate Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769 (1981) wherein the Supreme Court held that in order for an insurance carrier to avoid liability on account of breach of a notice provision, there must be findings of fact regarding the insured's good faith and any prejudice suffered by the insurer. We agree with defendants that public policy con-

siderations regarding the reasonable expectations of individual insureds which undergird the *Tate* decision are inapplicable to the case at bar. The contract of reinsurance at issue in this case was negotiated at arm's length by representatives of the respective insurance companies. While this is a case of first impression in this jurisdiction, there is substantial authority from other jurisdictions that the policy considerations applicable to conditions precedent in contracts of primary insurance between individual consumers are inapplicable in policies of reinsurance between insurance carriers standing on equal footing. *See, e.g., Liberty Mutual Insurance v. Gibbs*, 773 F. 2d 15 (1st Cir. 1985) and *Matter of Pritchard and Baird, Inc.*, 8 B.R. 265, 270 (D.C.N.J. 1980), *aff'd without opinion*, 673 F. 2d 1301 (3rd Cir. 1981).

The rule has long been established in this jurisdiction that one party's failure to comply with a condition precedent to a contract relieves the other party of its duty to perform under the contract irrespective of the party's good faith or the prejudicial effect. *See, e.g., Parrish Tire Co. v. Moorefield*, 35 N.C. App. 385, 241 S.E. 2d 353 (1978). Representatives of Fortress who testified explained that having the ceding company actually liable on the risk was significant to Fortress in terms of management and handling of claims. We hold that plaintiff's compliance could reasonably be expected to influence the decision of the insurance company and that the trial court did not err in concluding that plaintiff's breach of the condition precedent was material. *Bryant v. Nationwide Mutual Insurance Co.*, 313 N.C. 362, 329 S.E. 2d 333 (1985).

[3]   Plaintiff next argues that the trial court erred in not reforming the policy to reflect the intent of the parties that treaty participation would be included in the amount retained by plaintiff "for its own account." In making this argument, plaintiff relies heavily upon the testimony of Carmen Fiore, who was the executive vice president of defendant's Facultative Reinsurance Division at the time the plaintiff's policy was issued. According to Fiore's testimony, his understanding was that the policy language "for its own account" included both net retention and treaty reinsurance, and it was not the intent of the company to exclude treaty participation. Although Mr. Fiore was in charge of the Facultative Reinsurance Division and supervised the underwriters, Fiore admitted that he never had any discussion with his under-

writers as to what the term "company retention" included. Mr. Hugh C. Brewer, III, the underwriter who actually handled the issuance of plaintiff's contract, testified that no one at Penn Re ever discussed with him his negotiations with Stonewall and that he made no assumptions one way or another at the time the certificate was negotiated whether or not treaty reinsurance might be applicable to the $500,000 of company retention. Plaintiff argues that because Mr. Brewer was shocked when he found out how defendants were interpreting the language, there must have been a mistake. This mistake, according to plaintiff, is sufficient to satisfy the requirement of mutual mistake for purposes of reformation. The testimony of Fiore and Brewer is equivocal at best. Count three of the complaint, which plaintiff contends raised the issue of reformation, alleges reliance upon oral agreements and representations made before issuance of the written certificate of facultative reinsurance; however, the record is void of any evidence concerning any prior oral agreements. The evidence does not support a finding on the issue of reformation, and this assignment of error is overruled.

[4]  Plaintiff next argues that the trial court erred in concluding that Penn Re had not waived the alleged violation of the company retention and in concluding that Penn Re was not estopped to plead such alleged violation. In order for there to be either waiver or estoppel, the party against whom the waiver or estoppel is asserted must have full knowledge of his rights and of facts which will enable him to take action as to their enforcement. The trial court found, and the evidence supports the finding, that Stonewall reinsured its warranted retention "without the knowledge or approval of the defendants." Plaintiff's assertion that defendants waived strict enforcement of the contract language or that defendants were estopped to assert any violations of the warranty against plaintiff is not supported by the evidence.

[5]  Plaintiff next argues that the trial court erred in reciting that the reinsurance between Stonewall and AMRECO was facultative reinsurance. The court did not find that the special cession was facultative reinsurance, but rather that it was "not treaty reinsurance" and had the "essential characteristics" of facultative reinsurance. As the trial judge noted, the other findings and conclusions made it unnecessary to decide what kind of reinsurance the special cession was. Plaintiff has nowhere contended that the

term "for its own account" included facultative reinsurance. Plaintiff's position is that the term includes net retention plus treaty reinsurance. For this reason, this error, if any, was not prejudicial to plaintiff's claim. Further, there was evidence to support the trial court's finding that the insurance was not treaty insurance. Penn Re's expert testified as follows:

> The objective of both treaty and facultative is primarily the same thing. It's a mechanism through which liability is transferred from one company, the reinsured company, to a second company, the reinsuring company. The facultative transfer of that liability is done on an individual risk basis, which gives both the ceding company and the assuming company the opportunity to thoroughly consider that individual risk and that individual piece of business and to consider the liability which is being transferred one to the other.

> Treaty business does exactly the same thing, except the transfer is on a book of business, rather than on a single piece of business. Both forms of reinsurance are done under contract and the provisions of those contracts are negotiable between the two parties.

Another reinsurance expert testified as to characteristics of facultative reinsurance such as (i) reinsurance of an individual risk, (ii) an individually derived premium for the risk, (iii) specific underwriting information on the risk and (iv) the reinsurer's right to accept or reject a particular risk. Plaintiff's witnesses testified in accord with this testimony by defendants' experts. This Court is bound by the trial judge's findings when there is competent evidence to support those findings. This assignment of error is overruled.

Plaintiff next contends that the trial court erred in failing to make proper and adequate findings of fact and conclusions of law. The basis of this argument is that the narrative portion of the memorandum of decision does not constitute adequate findings of fact. We have carefully considered this assignment of error and reject plaintiff's contention. While it is true that Rule 52(a) of the North Carolina Rules of Civil Procedure requires that "[i]n all actions tried upon the facts without a jury . . . , the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of appropriate judgment[,]" Rule

52(a)(3) provides "[i]f an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." In our view, the findings of fact and conclusions of law are sufficiently specific for this Court to undertake appellate review. *See Coble v. Coble*, 300 N.C. 708, 268 S.E. 2d 185 (1980).

Similarly, plaintiff's argument that the trial court required plaintiff to present persuasive evidence to overcome *Fortress v. Jefferson*, 465 F. Supp. 333, *aff'd*, 628 F. 2d 860 (4th Cir. 1980) is meritless. The reference to the case was merely a citation of authority about which plaintiff had argued extensively before the court.

[6] Plaintiff next argues that the trial court erred in allowing testimony by one E. M. Cheek, Jr., as to his interpretation of the policy language concerning company retention. Cheek was defendant's claims manager and had some 35 years of experience in the insurance and reinsurance industry. The basis of plaintiff's argument is that if this testimony had not been allowed, then plaintiff's testimony would have been uncontroverted. Considering his years of experience with the company and his position with the company, Mr. Cheek was, in our opinion, competent and qualified to testify as to the company's interpretation of its policy language. *See Rule 701, N.C. Rules of Evidence*. Moreover, even assuming *arguendo* that it was error to permit the testimony of Mr. Cheek, the rule is that the judge with knowledge of the law is able to eliminate from the testimony he hears that which is immaterial and incompetent, and consider that only which tends properly to prove the facts to be found. *Jackson v. Collins*, 9 N.C. App. 548, 176 S.E. 2d 878 (1970). Similarly, plaintiff's assignment of error No. 18 concerning the testimony of witnesses Bogan and McIlwain is meritless. As noted by the Supreme Court in *State v. Pridgen*, 313 N.C. 80, 88, 326 S.E. 2d 618, 623 (1985):

> [I]t is not required that the evidence bear directly on the question in issue, and it is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known to properly understand their conduct or motives, or to weigh the reasonableness of their contentions.

*See also* Rule 401, *N.C. Rules of Evidence*.

Finally, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment on the issues of bad faith and unfair and deceptive trade practices. These claims are premised on plaintiff's interpretation of the retention clause. In other words, plaintiff argues that defendants acted in bad faith and engaged in unfair and deceptive practices by interpreting the retention clause to exclude treaty insurance. Our holding today that the trial judge did not err in finding the language "for its own account" did not include the amount ceded to a reinsurance carrier renders error, if any, in entry of the 10 November 1982 summary judgment harmless. This assignment of error is overruled.

Because of our disposition of this appeal, we need not consider defendants' cross assignments of error.

The judgment of the trial court is

Affirmed.

Chief Judge HEDRICK and Judge WEBB concur.