894 F.2d 402
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
PENN RE, INC., Plaintiff-Appellee,
v.
STONEWALL INSURANCE COMPANY, Defendant-Appellant.
 No. 89-2621.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 30, 1989.
Decided: Jan. 16, 1990.
 
 David Paul Sousa (R. Michael Strickland, Young, Moore, Henderson & Alvis, P.A., on brief), for appellant.
 Hugh Stevens (William G. Pappas, John J. Butler, Adams, McCullough & Beard, on brief), for appellee.
 Before PHILLIPS and WILKINSON, Circuit Judges, and JAMES C. FOX, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This case involves the interpretation of a single contract provision. Penn Re, Inc. ("Penn Re") seeks a declaratory judgment construing a certificate of facultative reinsurance issued by plaintiff to defendant Stonewall Insurance Company ("Stonewall"). The district court granted summary judgment for Penn Re, holding that Stonewall was bound by an earlier North Carolina Court of Appeals decision in an unrelated case between the same parties which found an identical contract provision to be unambiguous.
 
 
 2
 This action is predicated upon a policy of liability insurance issued by Harbor Insurance Company ("Harbor") to Burlington Northern Railroad, apparently with a limit of liability in the amount of $21,000,000, of which Harbor retained for its own account a substantial amount of the coverage and reinsured the balance with various other reinsurance companies. One of the reinsurers, Stonewall, issued its policy No. 12545 to Harbor under the date of January 24, 1974. This policy undertook to afford reinsurance coverage for two layers of liability. Layer A insured "$250,000 part of $5,000,000 excess $2,500,000" and layer B insured $1,825,000 part of $13,500,000 excess $7,500,000." Stonewall in turn reinsured all but $50,000 of its coverage under Layer A with another reinsurer and reinsured all of its coverage under layer B with other insurers.
 
 
 3
 Under its certificate of facultative reinsurance No. 11,039, dated March 7, 1974, Fortress Reinsurance Managers, Inc. (which later became Penn Re, Inc., the plaintiff in this action) undertook to reinsure a $500,000 part of Stonewall's coverage under layer B of the coverage stated above. It is customary in the reinsurance business for a company obtaining reinsurance to retain and remain liable in its own right for a portion of the reinsured risk, and in accordance with this custom the plaintiff included this retention clause in its certificate No. 11,039:
 
 
 4
 The company [Stonewall] warrants to retain for its own account the amount of liability specified in Item 3 [$500,000] unless otherwise provided herein, and the liability of the Reinsurer specified in Item 4 shall follow that of the Company, except as ... provided herein, and shall be subject in all respects to all the terms and conditions of the Company's policy.
 
 
 5
 As stated, Stonewall retained for its own account $50,000 of the risk it reinsured under layer A of the policy but did not retain any part of the risk it reinsured under layer B of its coverage.
 
 
 6
 Apparently the losses sustained by the Burlington Railroad under Harbor's policy were sufficient to invade the coverage afforded by Stonewall to Harbor under layer B of its coverage, and Stonewall therefore called upon Penn Re to satisfy the claims of two of Burlington's claimants in the amount of approximately $75,000. Upon learning that Stonewall reinsured all but $50,000 of its policy No. 12545 in treaty reinsurance placed with other reinsurers, Penn Re asserted such conduct to be a violation of the retention clause in its certificate quoted above. It consequently declined Stonewall's demand for payment and instituted this action to obtain a declaratory judgment substantiating its position.
 
 
 7
 Penn Re's motion for summary judgment is predicated upon the court's opinion and determination in litigation between Stonewall and Penn Re in the Wake County, North Carolina, Superior Court. Stonewall Ins. Co. v. Fortress Reinsurers Managers, Inc., No. 81-CVS-6577 (March 14, 1985), aff'd, 83 N.C.App. 263, 350 S.E.2d 131 (1986), disc. rev. denied, 319 N.C. 410, 354 S.E.2d 728 (1987) ("Stonewall I "). In Stonewall I the court, construing a facultative reinsurance contract containing retention language identical to that in the contract sub judice, held (a) compliance with a warrant retention clause to be a condition precedent to a reinsurer's (Penn Re's) liability, (b) Stonewall had breached the warranty by ceding part of its retention to treaty reinsurers, and (c) Penn Re had not waived the warranty and was not estopped to rely on its breach. The court therefore concluded that Stonewall was not entitled to recover in its action against Penn Re. Penn Re contends that the Stonewall I decision collaterally estops Stonewall from pursuing the instant litigation inasmuch as issues identical to those presented herein were previously determined in the state litigation. We agree.
 
 
 8
 In a diversity case involving a policy of insurance issued in North Carolina, the law of that state is controlling. Erie R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Hence, if North Carolina would apply the doctrine of collateral estoppel to the instant case, we are likewise compelled to do so. North Carolina recognizes the doctrine of collateral estoppel and has applied it in a number of cases. Thomas M. McInnis & Associates v. Hall, 318 N.C. 421, 349 S.E.2d 552 (1986). Under this doctrine, issues previously litigated between the same parties or parties in privity with them cannot be retried--even in unrelated causes of action--if certain requirements are met:
 
 
 9
 (1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.
 
 
 10
 King v. Grindstaff, 284 N.C. 348, 200 S.E.2d 799, 806 (1973) (citations omitted). The doctrine applies "regardless of whether the issue involves questions of fact or law." Tar Landing Villas Owners' Ass'n v. Town of Atlantic Beach, 64 N.C.App. 239, 307 S.E.2d 181, 185, rev. denied, 310 N.C. 156, 311 S.E.2d 296 (1984).
 
 
 11
 The factual and legal issues before the court in Stonewall I are congruent to those presented herein; hence, collateral estoppel precludes the instant litigation. As an initial matter, the parties in that case and the instant case are the same, although their positions are reversed (Stonewall was the plaintiff in Stonewall I and Penn Re was the defendant). In Stonewall I, Stonewall sought to recover under a different certificate of facultative reinsurance issued to it by Penn Re but which involved a retention warranty clause identical in language to that contained in Penn Re's certificate in this case.
 
 
 12
 Among other defenses Penn Re defended Stonewall I on the ground that Stonewall had breached the retention warranty compliance, which was a condition precedent to recovery by Stonewall. As in the instant case, Stonewall contended and offered evidence tending to show that its agreement to retain $500,000 of the risk "for its own account" was susceptible to interpretations other than a literal promise that it would not cede any portion of this sum to another carrier; that it was understood as a custom and practice in the reinsurance industry that the term "for its own account" permits the reinsurance of the retention by treaty reinsurance; and that the cession by Stonewall of $450,000 of the stated retention to another reinsurer had been accomplished by treaty reinsurance. As in the present case, Stonewall further contended that Penn Re had waived its right and was estopped to insist on a literal interpretation of the retention warranty clause and that in any event the certificate should be reformed to express the true intent of the parties.
 
 
 13
 Thus, in the prior action between these parties there were involved issues which are identical to the ones in the present case. Moreover, these issues were raised and actually litigated in the prior action, they were material and relevant to the disposition of that action, and their determination was necessary and essential to the resulting judgment.
 
 
 14
 Stonewall contends that one of its witnesses, Ronald Aruda, a former Penn Re employee, did not testify at the trial of Stonewall I and that he would testify that in issuing Certificate No. 11,039 on behalf of Penn Re, he knew and intended through his negotiations with Stonewall's managing general agent that the amount of Stonewall's retention could include treaty insurance. It appears that similar testimony was in fact introduced by Stonewall in the prior action, but, be that as it may,
 
 
 15
 if the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact.
 
 
 16
 Restatement of the Law of Judgments 2d, Sec. 27, p. 253. Stonewall's argument is unavailing for two reasons. First, there is nothing to indicate that Aruda was not available as a witness for Stonewall in the prior action. Second, Stonewall I held the language of the warrant of retention to be unambiguous, thus precluding parol evidence as to its meaning.
 
 
 17
 For the foregoing reasons, we find no error in the judgment of the district court.
 
 
 18
 AFFIRMED.